## AVALONBAY COMMUNITIES, INC. *v.* ZONING COMMISSION OF THE TOWN OF STRATFORD
### (SC 17462)

Borden, Norcott, Katz, Vertefeuille and Zarella, Js.*

Argued May 17—officially released October 2, 2007

* The listing of justices reflects their seniority on this court as of the date of oral argument.

*Timothy D. Bates*, with whom were *Linda L. Morkan* and, on the brief, *Maria T. Ackley*, for the appellant (defendant).

*Timothy S. Hollister*, with whom were *Gian Matthew Ranelli* and, on the brief, *Meghan Freed Pelletier*, for the appellee (plaintiff).

*Kevin C. Kelly*, with whom, on the brief, was *Carmine Perri*, for the appellee (intervenor Stratford town council).

*Opinion*

NORCOTT, J. This certified appeal arises out of the decision of the defendant, the zoning commission (commission) of the town of Stratford (town),[1] to deny three

---

[1] The intervening defendant, the Stratford town council (council), was permitted to participate in this appeal in order to raise environmental issues pursuant to General Statutes § 22a-19, following our decision in *AvalonBay Communities, Inc.* v. *Zoning Commission*, 280 Conn. 405, 908 A.2d 1033 (2006). The council had filed motions to intervene on behalf of the town in the trial court proceedings arising from both the plaintiff's appeals from the commission's denial of the affordable housing application and the inland wetlands and watercourses agency's denial of the plaintiff's wetlands application. Id., 409; see also footnote 6 of this opinion. The plaintiff filed motions to strike the council's petitions to intervene, and the trial court, *Shortall, J.*, filed separate memoranda of decision granting both motions to strike. *AvalonBay Communities, Inc.* v. *Zoning Commission*, supra, 410. The council appealed to the Appellate Court, which consolidated the appeals and reversed the trial court's decisions, concluding that § 22a-19 (a) permits

related applications of the plaintiff, AvalonBay Communities, Inc., for the construction in the town of an apartment complex that qualifies as an affordable housing development under General Statutes (Rev. to 1999) § 8-30g, as amended by Public Acts 1999, No. 99-261 (P.A. 99-261), and by the portions of Public Acts 2000, No. 00-206 (P.A. 00-206), that have been determined to be retroactive.[2] The plaintiff appealed from the commis-

---

the council's intervention in both appeals and that the town's intervention was not an improper intrusion into the delegated authority of the town's administrative agencies. *AvalonBay Communities, Inc.* v. *Zoning Commission*, 87 Conn. App. 537, 541, 867 A.2d 37 (2005). Both cases had proceeded to judgment in the trial court while the council's appeal from the motions to strike was pending. *AvalonBay Communities, Inc.* v. *Zoning Commission*, supra, 280 Conn. 411. We affirmed the judgment of the Appellate Court; id., 424; and accordingly, the council was permitted to participate in this appeal as an intervening defendant.

[2] General Statutes (Rev. to 1999) § 8-30g, as amended by P.A. 99-261, provides in relevant part: "(a) As used in this section: (1) 'Affordable housing development' means a proposed housing development (A) which is assisted housing or (B) in which not less than twenty-five per cent of the dwelling units will be conveyed by deeds containing covenants or restrictions which shall require that, for at least thirty years after the initial occupation of the proposed development, (i) such dwelling units shall be sold or rented at, or below, prices which will preserve the units as affordable housing, as defined in section 8-39a. Of the dwelling units conveyed by deeds containing covenants or restrictions, a number of dwelling units equal to not less than ten per cent of all dwelling units in the development shall be sold or rented to persons and families whose income is less than or equal to sixty per cent of the area median income or sixty per cent of the state median income, whichever is less, and the remainder of the dwelling units conveyed by deeds containing covenants or restrictions shall be sold or rented to persons and families whose income is less than or equal to eighty per cent of the area median income or eighty per cent of the state median income, whichever is less; (2) 'affordable housing application' means any application made to a commission in connection with an affordable housing development by a person who proposes to develop such affordable housing; (3) 'assisted housing' means housing which is receiving, or will receive, financial assistance under any governmental program for the construction or substantial rehabilitation of low and moderate income housing, and any housing occupied by persons receiving rental assistance under chapter 319uu or Section 1437f of Title 42 of the United States Code; (4) 'commission' means a zoning commission, planning commission, planning and zoning commission, zoning board of appeals or municipal agency exercising zoning or planning authority; and (5) 'municipality' means any town, city or borough, whether consolidated or unconsolidated.

sion's denial of its applications to the Superior Court,

"(b) Any person whose affordable housing application is denied or is approved with restrictions which have a substantial adverse impact on the viability of the affordable housing development or the degree of affordability of the affordable dwelling units, specified in subparagraph (B) of subdivision (1) of subsection (a) of this section, contained in the affordable housing development, may appeal such decision pursuant to the procedures of this section. Such appeal shall be filed within the time period for filing appeals as set forth in sections 8-8, 8-9, 8-28, 8-30, or 8-30a, as applicable, and shall be made returnable to the superior court for the judicial district where the real property which is the subject of the application is located. Affordable housing appeals, including pretrial motions, shall be heard by a judge assigned by the Chief Court Administrator to hear such appeals. To the extent practicable, efforts shall be made to assign such cases to a small number of judges, sitting in geographically diverse parts of the state, so that a consistent body of expertise can be developed. Unless otherwise ordered by the Chief Court Administrator, such appeals, including pretrial motions, shall be heard by such assigned judges in the judicial district in which such judge is sitting. Appeals taken pursuant to this subsection shall be privileged cases to be heard by the court as soon after the return day as is practicable. Except as otherwise provided in this section, appeals involving an affordable housing application shall proceed in conformance with the provisions of said sections 8-8, 8-9, 8-28, 8-30, or 8-30a, as applicable. . . .

"(d) Following a decision by a commission to reject an affordable housing application or to approve an application with restrictions which have a substantial adverse impact on the viability of the affordable housing development or the degree of affordability of the affordable dwelling units, the applicant may, within the period for filing an appeal of such decision, submit to the commission a proposed modification of its proposal responding to some or all of the objections or restrictions articulated by the commission, which shall be treated as an amendment to the original proposal. The filing of such a proposed modification shall stay the period for filing an appeal from the decision of the commission on the original application. The commission may hold a public hearing and shall render a decision on the proposed modification within forty-five days of the receipt of such proposed modification. The commission shall issue notice of its decision as provided by law. Failure of the commission to render a decision within said forty-five days shall constitute a rejection of the proposed modification. Within the time period for filing an appeal on the proposed modification as set forth in sections 8-8, 8-9, 8-28, 8-30, or 8-30a, as applicable, the applicant may appeal the commission's decision on the original application and the proposed modification in the manner set forth in this section. Nothing in this subsection shall be construed to limit the right of an applicant to appeal the original decision of the commission in the manner set forth in this section without submitting a proposed modification or to limit the issues which may be raised in any appeal under this section.

pursuant to the procedure outlined in § 8-30g. The trial

"(e) Nothing in this section shall be deemed to preclude any right of appeal under the provisions of sections 8-8, 8-9, 8-28, 8-30, or 8-30a.

"(f) Notwithstanding the provisions of subsections (a) to (e), inclusive, of this section, the affordable housing appeals procedure established under this section shall not be available if the real property which is the subject of the application is located in a municipality in which at least ten per cent of all dwelling units in the municipality are (1) assisted housing or (2) currently financed by Connecticut Housing Finance Authority mortgages or (3) subject to deeds containing covenants or restrictions which require that such dwelling units be sold or rented at, or below, prices which will preserve the units as affordable housing, as defined in section 8-39a, for persons and families whose income is less than or equal to eighty per cent of the area median income. The Commissioner of Economic and Community Development shall, pursuant to regulations adopted under the provisions of chapter 54, promulgate a list of municipalities which satisfy the criteria contained in this subsection and shall update such list not less than annually. . . ."

Section 1 (g) of P.A. 00-206, which amended § 8-30g (c) and is now codified at § 8-30g (g), provides: "Upon an appeal taken under subsection (f) of this section, the burden shall be on the commission to prove, based upon the evidence in the record compiled before such commission that the decision from which such appeal is taken and the reasons cited for such decision are supported by sufficient evidence in the record. The commission shall also have the burden to prove, based upon the evidence in the record compiled before such commission, that (1) (A) the decision is necessary to protect substantial public interests in health, safety, or other matters which the commission may legally consider; (B) such public interests clearly outweigh the need for affordable housing; and (C) such public interests cannot be protected by reasonable changes to the affordable housing development, or (2) (A) the application which was the subject of the decision from which such appeal was taken would locate affordable housing in an area which is zoned for industrial use and which does not permit residential uses, and (B) the development is not assisted housing, as defined in subsection (a) of this section. If the commission does not satisfy its burden of proof under this subsection, the court shall wholly or partly revise, modify, remand or reverse the decision from which the appeal was taken in a manner consistent with the evidence in the record before it." We previously have determined that this portion of P.A. 00-206 applies retroactively. See, e.g., *River Bend Associates, Inc.* v. *Zoning Commission*, 271 Conn. 1, 6 n.1, 856 A.2d 973 (2004); *Quarry Knoll II Corp.* v. *Planning & Zoning Commission*, 256 Conn. 674, 701, 780 A.2d 1 (2001).

The plaintiff submitted its applications four days before the effective date of P.A. 00-206, § 1 (g), which amended § 8-30g (c). Accordingly, both the commission and the trial court reviewed the plaintiff's applications under the substantive law contained in the 1999 revision of the statutes, as amended by P.A. 99-261, but followed the procedure contained in the statutes as

court rendered judgment sustaining the plaintiff's appeal and ordering the commission to "consider changes that can reasonably be made to protect the substantial public health and safety interests" implicated by the proposed development. The commission now appeals,[3] claiming that the trial court improperly (1) ordered it to redesign the plaintiff's affordable housing project and (2) weighed the identified public health and safety reasons individually, rather than collectively, when considering the commission's reasons for denying the plaintiff's application. Because we conclude that the trial court's judgment remanding the matter to the commission was not an appealable final judgment under this court's decision in *Kaufman* v. *Zoning Commission*, 232 Conn. 122, 129–31, 653 A.2d 798 (1995), we dismiss the commission's appeal for lack of subject matter jurisdiction.

The record reveals the following relevant facts and procedural history. In May, 2000, the plaintiff, a developer of luxury residential apartment complexes, entered into a contract to purchase a 11.99 acre parcel of land located at 1600 Cutspring Road in Stratford (Cutspring property). The Cutspring property, which currently is zoned for residential use,[4] is bounded by the Merritt Parkway to the south, Cutspring Road on the west, Circle Drive and several single-family homes to the north and Pumpkin Ground Brook on the east.

amended by P.A. 00-206, § 1 (g). For convenience, all references in this opinion to subsections (a), (b), (d), (e) and (f) of § 8-30g are to the 1999 revision of the statutes, as amended by P.A. 99-261. All references to § 8-30g (g) are to the current version of the statute.

[3] The Appellate Court granted the commission's petition for certification to appeal from the judgment of the trial court; see General Statutes §§ 8-9, 8-8 (o) and 8-30g (g); and we thereafter transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[4] Although the property is zoned for residential use, the western portion of the site presently is occupied by a commercial enterprise, a banquet hall and catering facility, which has been in operation as a nonconforming use on the site. Peak usage of that facility occurred in the 1970s and 1980s.

The Cutspring property is located in a section of town that is accessible only via a section of Cutspring Road that runs underneath the Merritt Parkway (underpass).

In September, 2000, the plaintiff submitted to the commission three applications seeking approval to construct an affordable housing development on the Cutspring property. In accordance with § 8-30g, the plaintiff filed with the commission: (1) a proposal to amend the town's zoning regulations to create a "mixed income housing development" district zone for higher density residential use; (2) a proposal to change the town's zoning map to place the Cutspring property in the proposed new zone; and (3) a site plan for its project, to be known as "Avalon at Stratford." The plaintiff proposed to construct 160 residential rental units[5] located in six buildings to be built on the Cutspring property, as well as a clubhouse, pool and recreation area, recycling center and parking for 320 vehicles. The affordability plan submitted by the plaintiff as part of its application to the commission demonstrated that the development met the criteria for an affordable housing development set forth in § 8-30g (a) (1) (B); see footnote 2 of this opinion; because 25 percent of the units would be affordable to low and moderate income households for thirty years. The plaintiff also submitted to the commission reports demonstrating that the commission's decision regarding the application would not be exempt from the appeal procedures provided by § 8-30g because, in 2000, only 8.22 percent of the town's housing units qualified as affordable. See General Statutes (Rev. to 1999) § 8-30g (f) (statutory appeal procedures not available if property located in municipality in which 10 percent of properties qualify as affordable). After a public hearing, the commission unanimously voted to deny all three of the plaintiff's applications, citing the

---

[5] The plaintiff's site plan called for sixty-eight one bedroom units, eighty two bedroom units and twelve three bedroom units.

following public health and safety concerns: (1) fire safety; (2) traffic; (3) internal circulation and site design; (4) density; and (5) wetlands.[6]

In May, 2000, pursuant to § 8-30g (d), the plaintiff submitted revised applications to the commission. The modifications to the site plan included, inter alia: (1) reducing the number of residential units from 160 to 146; (2) reducing the number of residential buildings from six to five; (3) moving one building further away from the wetlands surrounding Pumpkin Ground Brook; (4) improving access to the rear of the buildings; (5) increasing the width of the driveway; (6) increasing the number of parking spaces; and (7) purchasing an abutting parcel north of the Cutspring property, located at 140 Circle Drive, for use as a secondary emergency access to the site. On July 12, 2000, the commission held a public hearing on the plaintiff's resubmission.[7] Experts for the plaintiff and the town's various governmental departments offered testimony about the changes made to the application as they related to the public health and safety concerns identified by the commission in its denial of the plaintiff's original application, but most of the discussion focused on the commission's concerns about fire safety.

As a result of this discussion during the hearing, the plaintiff agreed to several additional changes to its amended site plan, including: (1) widening the secondary emergency access driveway by four feet to twenty

[6] The plaintiff also had submitted a simultaneous application to the town's inland wetland and watercourses agency, requesting a determination that the plaintiff's construction of the development did not constitute regulated activity, or, in the alternative, requesting a permit to conduct regulated activities. That agency also denied the plaintiff's application. That decision is not at issue in this appeal.

[7] The plaintiff, the town and the commission agreed that the record before the commission consisted of all testimony by witnesses and all submissions by the parties in connection with both the original application and the resubmission.

feet; (2) widening the entrance to the development from Cutspring Road by five feet to forty feet; (3) installing sprinklers on all decks and patios; and (4) striping portions of the driveway as fire lanes to prevent parallel parking. Thereafter, the commission again unanimously denied the revised applications, citing in its denial of the site plan application largely the same reasons that had caused it to deny the original application, all grouped under concerns about fire safety, traffic safety, internal circulation and site design, density and wetlands.

The plaintiff appealed to the trial court, challenging the denial on the ground that the commission had failed to show that its reasons for denying the applications were supported by sufficient evidence in the record and clearly outweighed the need for affordable housing in the town. The commission argued in response that its reasons for denial were based on public health and safety concerns that sufficiently were supported by the record, that the concerns outweighed the need for affordable housing, and that the concerns could not be addressed through reasonable changes to the plaintiff's application. After two days of hearings, the trial court, *Bryant, J.*, issued a memorandum of decision concluding that, of the commission's five reasons for denying the revised applications, fire safety was the only public health and safety concern that was supported by sufficient evidence in the record and outweighed the need for affordable housing.[8] Specifically, the trial court found that the commission had shown that there was

---

[8] The trial court also concluded that the commission had failed to carry its burden of showing sufficient evidence to support its denial of the application based on its concerns about traffic safety and inadequate recreational areas. The court also found that although the commission had shown sufficient evidence to support the remainder of its density concerns and its concerns about on-site circulation and wetlands, it failed to show that protecting such concerns clearly outweighed the need for affordable housing or that its concerns could not be addressed with reasonable changes.

sufficient evidence in the record to support its claim that the underpass, "the height of the individual apartment buildings in the proposed site, the inadequacy of Circle Drive to handle emergency vehicles and equipment and the internal turning radii of the driveways pose health and safety concerns," and that the public interest in health and safety clearly outweighs the need for affordable housing, because "the impediments to emergency vehicle and equipment access to the site and to the rear and upper floors of certain buildings proposed to be constructed on the site pose grave risks to the health and safety of prospective residents."[9] The trial court, however, then stated that the commission had failed to carry its final burden under § 8-30g (g), because it had "failed to prove that the denial was necessary as there is insufficient evidence to prove that the public interest could not be [protected] by reasonable changes to the affordable housing development plan."

The trial court continued: "If the roads are too narrow, the buildings too high and the buildings too close

[9] The trial court's decision with regard to the fire safety concerns was based on all of the evidence in the record, including, in particular, testimony by the chief of the town fire department and fire safety and traffic safety experts hired by both the town and by the plaintiff. The fire safety concerns all revolved around the proposed density of the development and the height of the buildings in light of the isolated location of the Cutspring property. The only route providing access to the area requires vehicles to travel through the underpass on Cutspring Road. The commission claims that the site plan, and in particular the height of the buildings, would require that the town's largest fire truck, an aerial apparatus known as Tower 1, be the primary responder to the site. The commission claims that the truck cannot traverse the underpass safely because it would need to cross the yellow line in order to fit under the Merritt Parkway, which would place it in the path of southbound traffic. Many of the modifications that have been made to the plan by the plaintiff to its site plan were made in response to the commission's concerns about the ability of Tower 1 to maneuver the site, including widening the width of the driveway, adjusting curb cuts, increasing turning radii at the entrance to and within the development, eliminating trees and landscaping that could interfere with its maneuverability and preventing parallel parking along the driveway in certain portions of the site.

to the slopes, it stands to reason that widening or relocating roads and shortening and relocating buildings would eliminate or sufficiently reduce health and safety concerns so that the public interest can be served and the affordable housing can be built. The record does not contain sufficient evidence of those parameters. The . . . commission is in the best position to identify the structural, environmental, equipment and technical context into which the development must be designed to fit. . . . The . . . commission bears the burden of proving that the public interest cannot be protected by reasonable changes to the applicant's proposed development." (Citation omitted.) Accordingly, the trial court remanded the case to the commission "with an order that it specify categorically the changes reasonably necessary to protect the substantial health and safety concerns cited as reasons for its denial." This certified appeal followed. See footnote 3 of this opinion.

Before considering the merits of this case, we note that the trial court's order remanding the case to the commission requires that we determine, sua sponte, whether we have subject matter jurisdiction over the commission's appeal.[10] "As we repeatedly have observed, [t]he right of appeal is purely statutory. It is accorded only if the conditions fixed by statute and the rules of court for taking and prosecuting the appeal are met. . . . Moreover, [t]he statutory right to appeal is limited to appeals by aggrieved parties from final judg-

[10] The parties previously disputed this jurisdictional issue before this court when, after this case had been fully briefed and assigned for oral argument, the plaintiff filed a motion to dismiss this appeal for lack of a final judgment. Although we denied the plaintiff's motion at that time, we now, sua sponte, reconsider our previous decision as to our jurisdiction. See, e.g., *Governors Grove Condominium Assn., Inc.* v. *Hill Development Corp.*, 187 Conn. 509, 511 n.6, 446 A.2d 1082 (1982) (per curiam), overruled on other grounds by *Morelli* v. *Manpower, Inc.*, 226 Conn. 831, 628 A.2d 1311 (1993); *Stamford* v. *Stephenson*, 78 Conn. App. 818, 823 n.9, 829 A.2d 26, cert. denied, 266 Conn. 915, 833 A.2d 466 (2003).

ments . . . . Because our jurisdiction over appeals . . . is prescribed by statute, we must always determine the threshold question of whether the appeal is taken from a final judgment before considering the merits of the claim." (Internal quotation marks omitted.) *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, 276 Conn. 168, 194, 884 A.2d 981 (2005). Thus, unless the remand order of the trial court in this zoning appeal constitutes a final judgment, we are required to dismiss the commission's appeal to this court for lack of subject matter jurisdiction.[11] *Lakeside Estates, LLC* v. *Zoning Commission*, 100 Conn. App. 695, 699, 919 A.2d 1044 (2007) ("the final judgment rule applies equally to zoning appeals as to other appeals").

This court previously has set forth the relevant law in *Kaufman* v. *Zoning Commission*, supra, 232 Conn. 129–30. "Because the provisions of the Uniform Administrative Procedure Act [General Statutes § 4-166 et seq., (UAPA)] do not govern a zoning appeal . . . it is the scope of the remand order in this particular case that determines the finality of the trial court's judgment.

[11] In *Kaufman* v. *Zoning Commission*, supra, 232 Conn. 130 n.7, we "assume[d] without deciding that if the trial court judgment had not been final, this court could not have exercised jurisdiction over the appeal, even though certification was granted by the Appellate Court," but also implied that the relevant statutes, General Statutes §§ 8-8 (o), 8-9 and 52-263, could be read as dispensing with the final judgment requirement in zoning appeals. Although this court has not had occasion to consider the applicability of the final judgment rule in the context of zoning appeals since *Kaufman*, the Appellate Court recently rejected the argument that "zoning appeals are exempt by statute from the final judgment rule." *Lakeside Estates, LLC* v. *Zoning Commission*, 100 Conn. App. 695, 698, 919 A.2d 1044 (2007). The Appellate Court noted that it "consistently has applied the final judgment requirement to zoning appeals"; id.; and that the "language used [in § 52-263] stating that appeals may be brought from final judgments except as provided for in . . . §§ 8-8 and 8-9, the statutory sections governing zoning appeals . . . [only] serves to account for the requirement that zoning appeals must be certified by this court." Id., 698–99. Accordingly, the court concluded that "the final judgment rule applies equally to zoning appeals as to other appeals." Id., 699.

. . . A judgment of remand is final if it so concludes the rights of the parties that further proceedings cannot affect them. . . . A judgment of remand is not final, however, if it *requires* [the agency to make] further evidentiary determinations that are not merely ministerial." (Citations omitted; emphasis added; internal quotation marks omitted.) *Kaufman* v. *Zoning Commission*, supra, 129–30.

In *Kaufman*, the trial court had determined that the plaintiff was entitled to a zone change in connection with its affordable housing application, thereby concluding that the plaintiff's application must be approved, but had "ordered a remand to give the [zoning] commission the opportunity to impose reasonable conditions and changes with respect thereto." Id., 128. In its decision, the trial court stated that it had "resolved all [of] the issues in favor of the plaintiff and therefore the court orders that the plaintiff's modified application be approved under such terms and conditions as the commission might reasonably prescribe within the parameters of this ruling. For this purpose and to this end, the decision is hereby remanded to the commission." (Internal quotation marks omitted.) Id., 128 n.4. "In response to the commission's motion for further articulation as to the scope of the remand, the trial court explained that while the commission was empowered on remand 'to impose reasonable conditions and reasonable changes' on the application, it was not empowered to deny the application entirely." Id. On appeal, this court applied the second prong of *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983),[12] which

---

[12] "In both criminal and civil cases . . . we have determined certain interlocutory orders and rulings of the Superior Court to be final judgments for purposes of appeal. An otherwise interlocutory order is appealable in two circumstances: (1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them." *State* v. *Curcio*, supra, 191 Conn. 31.

asks whether the decision of the trial court so concludes the rights of the parties that further proceedings can not affect them. This court concluded that the remand order was a final judgment because "[a]lthough the trial court's remand may have *allowed* the commission to hear additional evidence in order to determine whether to impose reasonable conditions on or to make reasonable changes in the application, the remand in no way *required* the commission to conduct such an inquiry.

"*Even more important, the trial court's judgment required the commission to approve the plaintiff's application.* With respect to this central issue, the trial court's decision so concludes the rights of the parties that further proceedings cannot affect them."[13] (Empha-

---

[13] Our analysis in *Kaufman* v. *Zoning Commission*, supra, 232 Conn. 130–31, relied heavily on this court's decision in *Schieffelin & Co.* v. *Dept. of Liquor Control*, 202 Conn. 405, 409–10, 521 A.2d 566 (1987), which addressed final judgment issues in administrative appeals brought pursuant to the UAPA. In *Schieffelin & Co.*, this court applied the second prong of *Curcio* to administrative appeals and concluded that the court has "distinguished . . . between two kinds of administrative remands. A trial court may conclude that an administrative ruling was in error and order further administrative proceedings on that very issue. In such circumstances, we have held the judicial order to be a final judgment, in order to avoid the possibility that further administrative proceedings would simply reinstate the administrative ruling, and thus would require a wasteful second administrative appeal to the Superior Court on that very issue. . . . A trial court may alternatively conclude that an administrative ruling is in some fashion incomplete and therefore not ripe for final judicial adjudication. Without dictating the outcome of the further administrative proceedings, the court may insist on further administrative evidentiary findings as a precondition to final judicial resolution of all the issues between the parties. . . . Such an order is not a final judgment." (Citations omitted.) Id., 410. The legislature thereafter amended the UAPA to provide explicitly that, "where the court issues a remand pursuant to [General Statutes] § 4-183 (j), the remand is a final judgment for purposes of appeal, irrespective of both the nature of the remand and the administrative proceedings that are expected to follow it." *Commission on Human Rights & Opportunities* v. *Board of Education*, 270 Conn. 665, 675, 855 A.2d 212 (2004).

In *Kaufman*, this court cited *Schieffelin & Co.* v. *Dept. of Liquor Control*, supra, 202 Conn. 409–11, in emphasizing that "the trial court's judgment required the commission to approve the plaintiff's application. With respect to this central issue, the trial court's decision so concludes the rights of the

sis added; internal quotation marks omitted.) *Kaufman* v. *Zoning Commission*, supra, 232 Conn. 130–31.

Therefore, under *Kaufman*, a trial court's remand to a zoning commission is an appealable final judgment if it (1) does not require further evidentiary determinations by the commission or (2) dictates the outcome of the postremand proceedings before the commission with respect to the application at issue. Compare *Westover Park, Inc.* v. *Zoning Board*, 91 Conn. App. 125, 133, 881 A.2d 412 (no final judgment when zoning board required to hear new evidence and trial court did not order approval of site plan), cert. denied, 276 Conn. 917, 888 A.2d 86 (2005), and *Kobyluck* v. *Zoning Board of Appeals*, 70 Conn. App. 55, 57, 796 A.2d 567 (2002) (no final judgment because "the court's remand for a new hearing will require the board of appeals to hear new evidence and to exercise its discretion"), with *Sydoriak* v. *Zoning Board of Appeals*, 90 Conn. App. 649, 651 n.1, 879 A.2d 494 (2005) (final judgment when remand does not permit board to deprive plaintiff of variance and when judgment "permits the board to consider evidence and to impose reasonable conditions on the [plaintiff's] variance application," but does not require board to do so), *Children's School, Inc.* v. *Zoning Board of Appeals*, 66 Conn. App. 615, 617–19, 785 A.2d 607 (final judgment when remand ordered

parties that further proceedings cannot affect them. . . . After explicitly resolving all [of] the issues in favor of the plaintiff . . . the trial court remanded the case only for the limited purpose of allowing the commission to impose reasonable conditions on or make reasonable changes to the development, if it so chose. Because the proceedings on remand cannot deprive the plaintiff of the zone change that the trial court has ordered to be approved, the trial court has rendered a final judgment and this court has subject matter jurisdiction over the commission's appeal." (Citations omitted; internal quotation marks omitted.) *Kaufman* v. *Zoning Commission*, supra, 232 Conn. 131. Notwithstanding the subsequent amendment to § 4-183 (j), this court's decision in *Schieffelin & Co.*, as applied by *Kaufman*, remains instructive in this context "[b]ecause the provisions of the [UAPA] do not govern a zoning appeal . . . ." Id., 129.

approval of plan subject to conditions and board not required to make further evidentiary determinations), cert. denied, 259 Conn. 903, 789 A.2d 990 (2001), and *Wisniowski* v. *Planning Commission*, 37 Conn. App. 303, 310–11, 655 A.2d 1146 (final judgment when approval of application is final and remand does not require further evidentiary hearing), cert. denied, 233 Conn. 909, 658 A.2d 981 (1995).

We conclude that the trial court's remand order in this case is not an appealable final judgment under *Kaufman.* Although the trial court's order, like the order in *Kaufman,* does not *explicitly* require the commission to make further evidentiary determinations, the trial court stated that the record before it did not contain sufficient evidence of the "parameters" of the commission's requirements with regard to the acceptable height of the buildings, the width of the roads, and distance of the buildings to the slopes. Given that the trial court conducted a plenary review of the record[14] and found certain evidence to be lacking, its order that the commission "specify categorically the changes reasonably

---

[14] The standard of judicial review in affordable housing appeals has two parts. "[I]n conducting its review in an affordable housing appeal, the trial court must first determine whether the decision from which such appeal is taken and the reasons cited for such decision are supported by sufficient evidence in the record. General Statutes § 8-30g (g). Specifically, the court must determine whether the record establishes that there is more than a mere theoretical possibility, but not necessarily a likelihood, of a specific harm to the public interest if the application is granted. If the court finds that such sufficient evidence exists, then it must conduct a plenary review of the record and determine independently whether the commission's decision was necessary to protect substantial interests in health, safety or other matters that the commission legally may consider, whether the risk of such harm to such public interests clearly outweighs the need for affordable housing, and whether the public interest can be protected by reasonable changes to the affordable housing development. . . . Because the plaintiff['s] appeal to the trial court is based solely on the record, the scope of the trial court's review of the [commission's] decision and the scope of our review of that decision are the same." (Citation omitted; internal quotation marks omitted.) *Carr* v. *Planning & Zoning Commission*, 273 Conn. 573, 596–97, 872 A.2d 385 (2005).

necessary to protect the substantial health and safety concerns cited as reasons for its denial" implies that the trial court intended to require the commission to conduct further evidentiary proceedings on remand.

More importantly, however, the trial court's order in this case, unlike the order in *Kaufman*, did not explicitly decide the ultimate issue in this case for the plaintiff. The trial court did not order the commission to grant the plaintiff's application, nor did it state that the commission was stripped of the power to deny the plaintiff's application. Instead, the trial court determined that the commission had not completed its duty as outlined under § 8-30g (g), because it had not shown that the public interests could not be protected by reasonable changes to the plaintiff's plan. The language of the trial court's decision leads us to conclude that it intended for the commission to provide certain parameters that the plaintiff could then use in revising its application for resubmission to the commission. At that point, the commission again would have the discretion to grant or to deny the plaintiff's application. Therefore, because the commission apparently retained its discretion with regard to the ultimate issue in this matter, the trial court did not render a final judgment, and this court does not have subject matter jurisdiction over the commission's appeal.[15]

The appeal is dismissed.

In this opinion the other justices concurred.

---

[15] We discuss one aspect of the commission's substantive claims, because it relates to the proper interpretation of the trial court's remand order. The commission claimed that the trial court's remand order was improper because it had the effect of improperly directing the commission to redesign the plaintiff's affordable housing application. This argument is based on the commission's assumption that the trial court sustained the plaintiff's appeal and ordered the commission to grant the plaintiff's application subject to reasonable conditions and changes. As discussed previously, we disagree with that interpretation of the trial court's order. The affordable housing appeals statutes authorize trial courts to employ much more expansive remedies than are available to courts in traditional zoning appeals. Specifi-

cally, § 8-30g (g) provides that, if the commission does not meet its burden of proof, "the court shall wholly or partly revise, modify, remand or reverse the decision from which the appeal was taken in a manner consistent with the evidence in the record before it." The trial court applied the balancing test and explicitly determined that the commission had failed to meet its burden of proving that reasonable changes could not be made that would protect the public interest with regard to fire safety. Rather than order the commission to grant the application on remand, which it had the power to do, the trial court chose instead to exercise the power of remand granted to it by § 8-30g (g) by ordering the commission to provide the court with more evidence. Thus, the trial court reserved judgment concerning approval of the plaintiff's application pending the results of its remand order.