RICHARD BUEHLER *v.* LILACH BUEHLER
(AC 30125)

DiPentima, Alvord and Dupont, Js.

Argued June 1—officially released September 29, 2009

*Richard Buehler*, pro se, the appellant (plaintiff).

*Charles W. Fleischmann*, for the appellee (defendant).

*Annmarie P. Briones*, with whom, on the brief, was *Marci Finkelstein*, for the guardian ad litem.

*Opinion*

DUPONT, J. In this dissolution of marriage action, the plaintiff, Richard Buehler, appeals from the orders of the trial court relating to alimony and custody and support of the parties' three minor children. On appeal, the plaintiff makes numerous claims as to the propriety of the court's orders that were issued on two different

dates. The defendant, Lilach Buehler, argues that the plaintiff's appeal is untimely as to many of those claims. The anomalous circumstances of this case, with its motion laden file, compel us to first set out its facts and procedural history before discussing those claims in detail or determining the extent to which the plaintiff's appeal is timely.

The parties were married on September 7, 1997, and have three minor children, ages ten, seven and four. On November 14, 2006, the plaintiff initiated dissolution of marriage proceedings by service of summons and complaint on the defendant. On June 4, 2008, the court, *Gordon, J.*, rendered judgment dissolving the parties' marriage on the ground that it had broken down irretrievably and that reconciliation was not a possibility. After a lengthy discussion of its factual findings, the court issued the following orders:[1] "[T]he defendant wife . . . shall have sole legal and physical custody of the minor children. She shall have sole decision-making power regarding all matters affecting the health, education and welfare of the children, which is to be read broadly . . . . All parenting time between [the plaintiff] and the children shall be supervised.[2] . . . *The court reserves jurisdiction regarding the cost of the supervised visitation. The guardian ad litem is charged with arranging the choices for supervised access—both paid and unpaid, and the different possibilities for the supervision. The options will then be discussed, and those alternatives will be given to the parents so they can interview or follow up. . . . Then, each parent can report back to the guardian ad litem*

---

[1] Those orders relating to future action by the court are italicized.

[2] The court made it clear that it did not order supervised visitation because of its concern about physical abuse of the children. The court found supervised visitation to be necessary because the evidence at trial indicated that the plaintiff's intense anger and obsession with engaging in conflict with the defendant prevented him from empathizing with and understanding the needs of his children.

*regarding their findings as to what they think is acceptable or not acceptable.* [The plaintiff] shall have visitation with the girls on the following basis: alternating Saturdays and Sundays . . . that is, one week is Saturday, the next week is Sunday, from 9 a.m. to 7 p.m., supervised, and every Wednesday from 4:30 p.m. to 7 p.m., supervised.[3] . . . The children, not the parents, will be making the telephone calls. Telephone calls are to be limited to no more than fifteen minutes. The parents are not to call the children. No more than one telephone call can be made per day. . . .

"[The defendant] is awarded $400 per week as child support. . . . [The defendant] is awarded alimony in the amount of $25,000 per year . . . . [The plaintiff] shall pay approximately $196, or one half, of the COBRA[4] cost for [the defendant's] health insurance. . . . Until the [marital home] is sold, each of the parties shall be responsible for one half of the mortgage payment, which is to be paid promptly on the first of each month. . . . *The court retains jurisdiction regarding the sale of the house.* . . . The plaintiff shall maintain the medical plan available to him through his employment for the benefit of the children. . . . Each parent shall be responsible for one half of all unreimbursed, noninsured health related expenses for the children. . . . Each of the parties is responsible for the debts listed on their financial affidavits . . . . A copy of the 2006 tax return shall be given to [the defendant] by [the plaintiff] within two weeks, along with a check for half of the refund if there is a refund. Each party is awarded the motor vehicle that [he or she is] currently driving, and each of them shall execute any documents necessary to effectuate any transfer of title to comply with this order.

---

[3] The court noted that there would be some exceptions to this schedule, including Father's Day and religious holidays.

[4] See the Consolidated Omnibus Budget Reconciliation Act of 1985, 29 U.S.C. §§ 1161 through 1168.

"The marital home . . . currently on the market, shall continue on the market. The coordination of the sale, the broker, etc., shall be [the defendant's] responsibility. Each of the parties is ordered to cooperate regarding the sale of the property and the asking price for the property and to cooperate with the broker. If there is any dispute, [the defendant] can select the broker and to set the price after consultation with [the plaintiff]. Until the property is sold, [the defendant] shall have sole possession and exclusive use of the property. Upon the closing, there will be deductions for all of the normal and customary closing costs . . . . Then, it shall be divided as follows from the joint proceeds: to [the defendant], the first $95,000 to repay the loan which saved the house. Then, to [the defendant], $12,000 to pay off the balance on her car. Then, to [the defendant] an amount equal to the credit card debt which she incurred from the time of the separation to February 27, 2007. Then, the fees for the guardian ad litem and the attorney for the guardian ad litem. These amounts are to be paid off of the top of the proceeds. Then the balance is to be divided between the parties equally. But from [the plaintiff's] side, shall first be subtracted $65,000 to be paid to [the defendant], which represents her share in the funds which he appropriated out of their accounts before filing this action. [The plaintiff] shall not contact any of the providers of medical or health care for the children, nor the school, nor the providers of any activities or lessons. Unless they initiate contact, there is to be no unsolicited contact by [the plaintiff] with them unless he is attending an event open to the public or to other parents. . . . *The [c]ourt reserves jurisdiction regarding the secondary education of the children.* The parties are referred to the family relations office for any disputed issues regarding personal property. . . . *The court retains jurisdiction regarding the bills for legal fees submitted by [the attorney for the guardian ad litem] and the guardian ad*

*litem.* . . . The defendant is ordered to obtain life insurance in the amount of $100,000, naming the minor children as irrevocable beneficiaries for so long as they are minors . . . ." (Emphasis added.)

On June 13, 2008, the defendant filed a motion for contempt, in which she requested that the plaintiff be found in contempt for failure to make timely mortgage, child support and alimony payments in violation of the June 4, 2008 orders. In addition, on June 19, 2008, the defendant filed a motion seeking clarification of the following issues: whether the court ordered the parties to annually exchange information on child support and alimony; whether the children were to be with the defendant on the Jewish holiday of Shavuot; whether the plaintiff was to obtain counseling; whether the parties were to share equally in the defendant's costs for day care; whether the parties were to claim deductions in equal amounts for mortgage interest and property taxes for the year 2008; and whether the plaintiff's access to the children on school premises should be supervised.

On June 24, 2008, the court held a hearing on the defendant's motions for contempt and clarification, and on the issue of supervised visitation, which the court, in its June 4, 2008 memorandum of decision,[5] indicated it would revisit. At the conclusion of the hearing, the court issued the following orders: (1) the plaintiff was found in wilful contempt of the court; (2) the plaintiff was subject to an immediate wage withholding of $3592.50 bimonthly; (3) an arrearage of $2185 was found and was to be paid out of the plaintiff's share of the sale of the marital home; (4) the sale of the marital home was ordered, and the title was passed to the defendant to preserve the estate and to effectuate the

---

[5] The memorandum of decision is a signed transcript of the court's oral decision of June 4, 2008.

sale; (5) $1000 in attorney's fees to the defendant was to be paid out of the plaintiff's share of the marital home; (6) an annual exchange of information should occur regarding income so that child support and alimony orders may be monitored; (7) Shavuot was included as a Jewish holiday for the defendant; (8) no day care costs were to be awarded at the time; (9) the parties could claim deductions for mortgage interest and property tax deductions until the marital home was sold in the same proportion as payments were made by each party; (10) no supervision was required when the plaintiff attended school events that were open to the public or when all parents are invited; and (11) the court took judicial notice that three persons were acceptable as supervisors and had been contacted by the guardian ad litem regarding visitation at costs ranging from $40 to $75 per hour plus transportation.

On July 3, 2008, the plaintiff, acting pro se, filed this appeal.[6] On July 16, 2008, the defendant filed in this court a motion to dismiss the appeal on timeliness grounds.[7] The plaintiff filed a preliminary statement of the issues on August 25, 2008, and a memorandum of law in opposition to the motion to dismiss on August 26, 2008.[8] The defendant, in her motion to dismiss, argued that the plaintiff's appeal was untimely because it was filed more than twenty days after the date of

[6] On the same date, the plaintiff filed a motion for a stay, which the court denied on September 23, 2008.

[7] Practice Book § 66-8 provides in relevant part: "Any claim that an appeal . . . should be dismissed, whether based on lack of jurisdiction, failure to file papers within the time allowed or other defect, shall be made by a motion to dismiss the appeal . . . . Any such motion must be filed in accordance with Section 66-2 and 66-3 within ten days after the filing of the appeal . . . ." The defendant had been granted an extension of time to file her motion to dismiss. See Practice Book § 66-1.

[8] The plaintiff's memorandum of law in opposition to the motion to dismiss was untimely. Practice Book § 66-2 requires that a party filing an opposing motion do so within ten days of the filing of the motion. This court, however, considered the late response in an effort to have all arguments before it.

final judgment, which she alleged occurred on June 4, 2008.[9] The plaintiff, in his memorandum of law in opposition, countered that his July 3, 2008 appeal was timely because (1) the judgment of dissolution was not complete until June 24, 2008, and (2) he was challenging only those issues over which the court explicitly reserved jurisdiction in its June 4, 2008 decision and which were addressed in its June 24, 2008 orders, namely, the sale of the house and the selection and cost of supervisors for visitation.[10]

On December 10, 2008, this court issued its decision on the defendant's motion to dismiss. This court concluded that the plaintiff's appeal was untimely as to the June 4, 2008 decision because the appeal was filed twenty-nine days after that date but was timely as to the June 24, 2008 orders because the appeal was filed within twenty days of that date. This court, therefore, granted the defendant's motion to dismiss as to any claims arising out of the June 4, 2008 decision and denied the motion as to any claims arising out of the June 24, 2008 orders. This court further ordered, sua sponte, that issues one, two, three, five, six and seven of the plaintiff's preliminary statement of issues be stricken as they all related to the June 4, 2008 decision. These issues included, respectively, the legal custody of the children, the physical custody of the children, the parenting plan for the children, the distribution of liabilities, and child support and alimony. Issues four and eight were to remain in the preliminary statement

---

[9] Practice Book § 63-1 provides in relevant part: "(a) . . . Unless a different time period is provided by statute, an appeal must be filed within twenty days of the date notice of the judgment or decision is given. . . .

"(b) . . . If notice of the judgment or decision is given in open court, the appeal period shall begin on that day. . . ."

[10] The plaintiff's appeal form, however, indicates that he is appealing from the June 4, 2008 judgment, and several issues in his preliminary statement of the issues related strictly to that decision.

of issues, insofar as those issues related to the distribution of assets and the fees of the guardian ad litem and the guardian ad litem's attorney, which were not fully decided until the June 24, 2008 orders.

Two days prior to this court's decision on the defendant's motion to dismiss the appeal, the plaintiff filed his brief with this court. In his brief, the plaintiff claimed that the trial court improperly: (1) granted sole legal and physical custody of the children and sole decision-making power to the defendant; (2) ordered that his visits with the three minor children be supervised; (3) ordered him to pay $58,000 per year for the supervised visitation; (4) prohibited the parents from calling the children and limited the number and duration of the calls; (5) awarded the defendant alimony and child support in the amount of $5000 per month; (6) awarded the defendant one half of the mortgage payment prior to the sale of the home; (7) ordered him to pay one half of the defendant's insurance for the next thirty-six months; (8) awarded the defendant lump sums of $95,000 and $12,000, and an amount equal to her credit card debt; (9) awarded the defendant the first $65,000 from the sale of the marital home; (10) made him solely responsible for jointly incurred credit card debt; (11) awarded the defendant sole ownership of a jointly owned vehicle without compensation to him; (12) awarded the defendant one half of the 2006 tax refund; (13) awarded fees, in excess of $85,000, to the guardian ad litem and her attorney despite an agreement that the services were to be provided pro bono; and (14) granted the defendant overriding authority to select a broker and to set the price of the marital home.

Claims one, two, four, five, six, seven, eight, nine, ten, eleven, twelve and fourteen, as previously listed, relate to the court's June 4, 2008 orders. The plaintiff challenges this court's decision to grant the defendant's

motion to dismiss as to those claims. Although we recognize that we have the authority at any time prior to the decision to reconsider motion rulings made while an appeal is pending; see *AvalonBay Communities, Inc.* v. *Zoning Commission*, 284 Conn. 124, 134 n.10, 931 A.2d 879 (2007); we see no compelling reason to do so in this case, particularly when this court previously denied the plaintiff's motion for reconsideration of its decision. Accordingly, we will not review these claims.

In regard to the plaintiff's third claim, namely, that the court improperly ordered the plaintiff to pay $58,000 per year for the supervised visitation, the court, in its June 4, 2008 orders, specifically reserved its jurisdiction regarding the cost of supervised visitation. The court stated: "The guardian ad litem is charged with arranging the choices for supervised access—both paid and unpaid, and the different possibilities for the supervision. The options will then be discussed, and those alternatives will be given to the parents so they can interview or follow up. The plaintiff and [the] defendant are not to talk to each other about the choices of supervision. Then, each parent can report back to the guardian ad litem regarding their findings as to what they think is acceptable or not acceptable." During the dissolution trial, the court also stated: "I'll give you some report back dates so that we can come back and we can find out if there is a financial thing."

At the June 24, 2008 hearing, the court revisited the issue of supervised visitation. The guardian ad litem stated: "Following the court's order, I sent out a letter on June 6 to counsel advising of three possible supervised visitation services. . . . John Magnano, Supervised Visitation Services in Stamford . . . is available, and he charges $75 per hour. Dennis Puebla, who is also available, charges the same amount . . . . And a fairly new supervised visitation services called Kids First at the Exchange Club with Saundra Charles. . . . The

supervisors [there] . . . are acceptable to me . . . . And they are $40 per hour. I sent this out to counsel. I spoke with [the defendant]. She contacted . . . all three of the choices and may report to the court with respect to her position. I have not heard anything from [the plaintiff] or his attorney . . . ."

Counsel for the plaintiff[11] stated: "I had a conversation with [my client] concerning that. And he shared with me the fact that he would be entitled to roughly on average fifteen hours a week for visitation. And at the rate of $75 per hour, that would come out to $58,500, and there's no way he can afford to pay that." The court then asked counsel if his client interviewed any of the services, and counsel replied: "No, not that I know of." The court stated: "All right. Well, then there's no point in having a conversation about it because the argument was already made about the cost. And my feeling is, if he can afford two hours, two hours is better than nothing. . . . So, maybe he should interview the $40 person and see if he likes them. If it's okay with [the defendant], then it's the least expensive, and he can figure out whatever he can do for his budget." Counsel for the plaintiff then asked the court if it would modify its ruling. The court replied: "I'm unwilling to modify the ruling. I don't have a motion to modify the ruling. . . . I'm not going to proceed without [the plaintiff] or his testimony . . . . [I]t's true that I said I would deal with [this] at some point, but you're going to have to now do it by a motion since he's not participating. I'm not going to order anything at this point. . . . He hasn't interviewed any of the people. So, we're still at square one except we know that there are three people who are acceptable, available, two are at $75 an hour and one is at $40 an hour, and the ball is in his court." Counsel for the defendant then stated: "For the record, Your Honor, my client did check them out, and her

---

[11] The plaintiff himself was not present at the hearing.

preference would be for Mr. Puebla because he has the most experience." The court responded: "All I'm saying is, we're not going to get anywhere . . . because unless [the plaintiff] . . . interviews somebody and has a different opinion, and then that's something that could probably be, you know, worked out. I mean, the cost [is also an] issue . . . ."

In consideration of this discussion, the court included the following in its June 24, 2008 order: "The [c]ourt takes judicial notice that three persons were acceptable and contacted by the [guardian ad litem] regarding supervised visitation at costs ranging from $40 to $75 per hour plus transportation." The plaintiff interprets this order as instructing him to pay $58,000 per year for supervised visitation. Yet, the language of the order, combined with the statements made by the court at the June 24, 2008 hearing, makes it very clear that the court refused to resolve the issue of supervised visitation or order the plaintiff to pay any amount toward it, until the plaintiff interviewed the $40 per hour service provider. The court merely took judicial notice of the fact that the guardian ad litem had complied with its previous request to explore options for supervised visitation services and then present those options to the court and to the parties at a later date. The record reveals no subsequent order made by the court in regard to the specifics of supervised visitation. Because the court has yet to render a decision on the selection and cost of supervised visitation services, there is no final judgment. Consequently, this court lacks jurisdiction to entertain this claim. "The jurisdiction of the appellate courts is restricted to appeals from judgments that are final. General Statutes §§ 51-197a and 52-263; Practice Book § [61-1] . . . . The appellate courts have a duty to dismiss, even on [their] own initiative, any appeal that [they lack] jurisdiction to hear." (Internal quotation marks omitted.) *Liberty Mutual Ins. Co.* v. *Lone Star*

*Industries, Inc.,* 290 Conn. 767, 793–94, 967 A.2d 1 (2009).

The plaintiff's thirteenth claim is that the court improperly awarded fees, in excess of $85,000, to the guardian ad litem and her attorney. The court, on June 4, 2008, ordered that those fees be paid from the sale of the marital home. The issue, however, was not finalized until the court's June 24, 2008 orders.

At the June 4, 2008 hearing, the guardian ad litem produced an affidavit for legal fees, in which she requested $55,475 for services rendered. Counsel for the plaintiff stated: "I haven't inquired personally, but what I have been told is that the guardian ad litem agreed to serve without compensation, and now she's asking some $55,000." The court replied: "I can't imagine that the guardian ad litem, who is an employee of Connecticut Legal Services, and who is giving up her time, which would otherwise be spent in the care and concern of indigent persons, would do that. But if that's what you say, find me the order and the stuff, and then we'll take it up and you can—I don't think the house is going to sell between now and the time we come back on the stuff. Or if it does, we'll reserve those funds and hold them in escrow until that issue is determined." Counsel for the plaintiff then stated: "Second question, Your Honor, is I understand that there is a request for legal fees submitted by [the attorney for the guardian ad litem]. . . . I don't know how much that amount is, and I haven't seen it." The court responded: "It was filed. I saw it. . . . Why don't you take a look at it? I'll reserve those. If the house sells before we get back to it on our upcoming date, it'll get held in escrow. If you want to talk about their fees—I thought you had seen them and you didn't have any problem with them. So, if you haven't, we can take that up when we come back."

At the June 24, 2008 hearing, the guardian ad litem stated: "With respect to fees, affidavits filed by [the

attorney for the guardian ad litem] and myself, the court afforded [the plaintiff's counsel] an opportunity to review the affidavits, since he had only gotten them today. And I am bringing it up now so there's no further issue." The court then asked the plaintiff's counsel if he had any objection to the fees. Counsel replied: "Not in the slightest, Your Honor. . . . I want the record to show that I reviewed the affidavits thoroughly. I'm satisfied that whatever was set forth in there as having been rendered was rendered, and the rates that were assigned thereto are appropriate . . . ."

The statutory authority for the award of counsel fees is found in General Statutes § 46b-62, which provides in relevant part: "If, in any proceeding under this chapter and said sections, the court appoints an attorney for a minor child, the court may order the father, mother or an intervening party, individually or in any combination, to pay the reasonable fees of the attorney . . . ." This includes fees for the guardian ad litem. See *Lamacchia* v. *Chilinsky*, 79 Conn. App. 372, 374, 830 A.2d 329 (2003). "The court may order either party to pay the fees . . . pursuant to . . . § 46b-62, and how such expenses will be paid is within the court's discretion. . . . An abuse of discretion in granting . . . fees will be found only if [an appellate court] determines that the trial court could not reasonably have concluded as it did." (Internal quotation marks omitted.) *Utz* v. *Utz*, 112 Conn. App. 631, 641, 963 A.2d 1049, cert. denied, 291 Conn. 908, 969 A.2d 173 (2009). "In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding on this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding

of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence in the record to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Lamacchia* v. *Chilinsky,* supra, 375.

The plaintiff argues that the court abused its discretion in awarding fees to the guardian ad litem and counsel for the guardian ad litem because the guardian ad litem had agreed to perform her services without compensation and there was no written retainer agreement with counsel for the guardian ad litem. The plaintiff specifically argues: "There was a stipulation between the parties, entered into on January 2, 2007, appointing a guardian ad litem for the three minor children. . . . [The guardian ad litem], was at the time, an employee of Connecticut Legal Services, a 'non-profit, civil law firm.' During that meeting [the guardian ad litem] represented to all parties and counsel that her services were to be rendered without compensation. . . . [T]here was absolutely no written contract, signed by either party specifying the guardian ad litem's fees, hours, payment method, etc. . . . The trial court could not have unilaterally imposed a financial obligation on the parties for which neither agreed. . . . Since there was absolutely no evidence that a written contract for payment existed, it was an abuse of the court's discretion to obligate the parties to pay such a bill. Furthermore, there was never a written retainer entered into by the plaintiff with counsel for the guardian ad litem, Marci Finkelstein, Esq. As such, the plaintiff was never advised that he would be indebted for [her] services . . . . It was obvious that the plaintiff has not entered into any contractual relationship with the guardian's

attorney; therefore, the trial court erred in obligating the plaintiff to this outrageous sum."

There is no evidence in the record that the guardian ad litem represented that she would provide her services for free. This is not remarkable considering the plaintiff's representation that she *orally* agreed to work pro bono. It is notable that the plaintiff was given the opportunity to present evidence in support of such a representation at the June 24, 2008 hearing but failed to do so. Instead, at that hearing, counsel for the plaintiff represented that he had no objection to the fees. Furthermore, the language of § 46b-62 makes it clear that the court has the power to "order the father, mother or an intervening party, individually or in any combination, to pay the reasonable fees"; General Statutes § 46b-62; regardless of whether there is a written contract or retainer agreement. The court need only consider "the financial resources of both parties and the criteria set forth in . . . § 46b-82. . . . Section 46b-82 instructs the court to consider . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties . . . ." (Citation omitted; internal quotation marks omitted.) *Lamacchia* v. *Chilinsky,* supra, 79 Conn. App. 376. We conclude, therefore, that the court did not abuse its discretion in ordering the fees for the guardian ad litem and counsel for the guardian ad litem to be paid from the sale of the marital home.[12]

The appeal is dismissed with respect to the payment of the cost of supervised visitation. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

---

[12] Because the plaintiff does not challenge the reasonableness of the fees, or the manner in which they were allocated, i.e., from the sale of the marital home, we will not delve into those aspects of the court's order. See *Lamacchia* v. *Chilinsky,* supra, 79 Conn. App. 374 n.2.